IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY CLAYTON, ) | |
| Plaintiff, ) | |
| v. ) | 2:21-CV-843 |
| DOLLAR BANK, ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

**OPINION**

Introduction

Plaintiff Mary Clayton ("Clayton") filed the complaint in this case in the Court of Common Pleas of Allegheny County, Pennsylvania (the "state court"), and asserted only state law claims. On June 30, 2021, defendant Dollar Bank ("Dollar") filed a notice of removal. Dollar argues that Subpart B of Federal Reserve Board Regulation J, 12 C.F.R. § 210.25 ("Regulation J") governs the Fedwire system and completely preempts state law causes of action, such that this court may exercise federal question jurisdiction.

On July 7, 2021, the court issued an Order to Show Cause why the case should not be remanded to the state court for lack of subject-matter jurisdiction. Dollar filed its position with respect to the show cause order (ECF No. 7); Clayton filed a response (ECF No. 8) and Dollar filed a reply brief (ECF No. 9). Upon consideration of the filings, the court will remand this case to the state court FORTHWITH.

Factual and Procedural Background

Clayton, a 79-year-old widow, was a long-time customer of Dollar. The complaint alleges that Clayton became the victim of an unknown scam artist. Over the course of several

months in 2019, Clayton went to the Bethel Park branch office of Dollar and, with the assistance of bank personnel, executed four wire transfers totalling $4,300,000.00. In each instance, Dollar wired the funds to Silvergate Bank in La Jolla, California, for the account of Paxos Trust Company LLC, located in New York, NY. The bank employees never asked whether Clayton intended, or knew, that the wire transfers were being made through a crypto currency bank to a crypto currency trust company. A Dollar employee procured an ITBIT Wallet Deposit ID for Clayton, without which the transfers could not have been processed. Complaint ¶ 34.

Clayton alleges that Dollar was negligent in not protecting her from this fraudulent scheme. Clayton also alleges that Dollar's advertising claims about keeping its clients' information safe from scams were misleading and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), Pa. Stat. Ann. § 201-1 et seq., for which she seeks treble damages. *See* Complaint, ECF No. 1-2. Dollar was served with the complaint on June 1, 2021, and filed its timely notice of removal on June 30, 2021.

Standard of Review

The court has a nondelegable duty to ensure that it may properly exercise subject-matter jurisdiction over a case. The burden to establish that subject-matter jurisdiction is proper rests on the party invoking that jurisdiction. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). In this case, Dollar, as the removing party, has the burden.

The removal statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  The statute is to be strictly construed against removal. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  All doubts are to be resolved in favor of remand to the state court.  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citing *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

The strict removal policy "has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).  In part, the strict removal policy implements Congress' intent.  *See Samuel-Bassett*, 357 F.3d at 396 ("so that the Congressional intent to restrict federal diversity jurisdiction is honored.").  The policy also reflects federalism and prudential concerns.  In *Abels v. State Farm Fire & Casualty Co.*, the court explained: "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand."  *Abels*, 770 F.2d 26, 29 (3d Cir. 1985).

Dollar recognizes that: (1) the complaint asserts only state law causes of action for negligence and violation of the PUTPCPL; (2) removal would be proper only under the narrow "complete preemption" or *Grable* doctrines; (3) the Supreme Court and United States Court of Appeals for the Third Circuit have not addressed the specific issue raised in this case; and (4) at best, there is a circuit-split among the courts that have addressed it.  As discussed below, Dollar did not meet its burden to demonstrate that removal jurisdiction is proper.

In any event, as will also be discussed below, the court concludes that the more persuasive case law reflects that only Congress (not a federal agency in a regulation) can <u>completely</u> preempt a state law cause of action to create removal jurisdiction.  *See AmSouth Bank v. Dale*, 386 F.3d 763, 776-77 (6th Cir. 2004).  The alleged circuit split is illusory because the decisions relied upon by Dollar, i.e., *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th

3

Cir. 2002), and *Donmar Enterprises, Inc. v. S. Nat. Bank of N. Carolina*, 64 F.3d 944, 949 (4th Cir. 1995), involve "defensive preemption" not "complete preemption."

Discussion

Dollar concedes that the complaint in this case asserts only state law causes of action, but contends that federal question jurisdiction exists under the doctrine of complete preemption. In essence, Dollar argues that Regulation J governs the Fedwire system and completely preempts Clayton's state law negligence claim. Dollar argues that the court should exercise supplemental jurisdiction over the PUTPCPL claim. Clayton argues that removal is improper because her lawsuit does not implicate Regulation J. Clayton points out that the complaint does not allege any problem with the actual wire transfers, but instead focuses on Dollar's misconduct prior to the wire transfers, in particular, in obtaining the ITBIT Wallet Deposit ID. Dollar maintains that the conduct is intertwined with the wire transfers, and therefore, is exclusively governed by Regulation J.

1. Federal question jurisdiction – general rule

Pursuant to the long-established "well-pleaded complaint" rule, "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of [her] own cause of action shows that it is based upon those laws or that Constitution." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). In other words, federal question jurisdiction pursuant to 28 U.S.C. § 1331 exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The existence of a federal <u>defense</u>, including a defense that the plaintiff's claims are preempted by a federal statute, does not confer federal question jurisdiction. *Id.*; *Franchise Tax Bd. of Cal. v. Constr. Laborers Trust for S. Cal.*, 463 U.S. 1, 12 (1983).  It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 12) (emphasis in original).

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank*, 539 U.S. at 6. *See generally* <u>Wright & Miller</u>, 14C Fed. Prac. & Proc. Juris. § 3722.2 (Rev. 4th ed., April 2021 update) (noting the important distinction between "complete" preemption and the "ordinary" preemption defense).

In this case, it is undisputed that Clayton and Dollar are both citizens of Pennsylvania and diversity of citizenship does not exist.  It is also undisputed that the face of Clayton's complaint does not affirmatively allege a federal claim; she asserts only state law claims.  The mere fact that Dollar intends to assert Regulation J as a preemption <u>defense</u> does not create removal jurisdiction.

2. The "complete preemption" exception

Dollar appears to concede that this case is not removable under the "well-pleaded complaint" rule.  Instead, Dollar invokes the complete preemption doctrine, which is "a well-recognized albeit narrow exception to the well-pleaded complaint rule." *Mercedes-Benz USA,*

*LLC v. Nippon Yusen Kabushiki Kaisha*, No. CV 18-13764, 2018 WL 6522487, at *3 (D.N.J. Dec. 12, 2018).  As succinctly summarized in *Mercedes-Benz*:

> The Supreme Court has held that complete preemption applies when a federal cause of action "wholly displaces the state-law cause of action" asserted in a complaint such that the claim, though ostensibly seeking relief under state law, in reality arises under federal law and is thus removable under section 1441. *Beneficial Nat'l Bank*, 539 U.S. at 8. "Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008). The doctrine of complete preemption in effect "converts a state-law claim into a federal one." *Caterpillar*, 482 U.S. at 393; *see also Tishman*, 760 F.3d at 302 (holding that complete preemption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint.").

*Mercedes-Benz*, 2018 WL 6522487, at *3.

The standard for a removing party to establish complete preemption is difficult to meet. The claim must come within the scope of a federal statute that has "unusually powerful preemptive force," that is, federal authority " 'so powerful as to displace entirely any state cause of action.' " *Beneficial Nat'l Bank*, 539 U.S. at 7 (quoting *Franchise Tax Bd.*, 463 U.S. at 23-24). In addition, the federal statute must provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* at 8.

For many years, the only statute that gave rise to complete preemption was § 301 of the Labor-Management Relations Act of 1947 ("LMRA"), as interpreted in *Avco Corp. v. Machinists*, 390 U.S. 557 (1968).  In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987), the Supreme Court explained that it would have been reluctant to find complete preemption despite the extraordinary preemptive power in ERISA.  The Court, however, found Congress intended complete preemption under ERISA § 501(a)(1)(B) based on the statutory parallels with § 301 of the LMRA and a conference report that stated:  "All such actions in

Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Id.* The complete preemption doctrine also applies to §§ 85 and 86 of the National Bank Act. *See Beneficial Nat'l Bank*, 539 U.S. at 10–11 (usury claims against federally chartered banks).[1] In *Beneficial*, the Supreme Court clarified that the proper inquiry is "whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." 539 U.S. at 9. Therefore, the fact that a statute at issue was enacted prior to the removal statute is irrelevant. *Id.*

In *Mercedes-Benz,* the court explained that one overlooked aspect of the complete preemption doctrine is that the federal statute with completely preemptive force must also give rise to *original* federal jurisdiction. *Mercedes-Benz*, 2018 WL 6522487, at *5 (D.N.J. Dec. 12, 2018) (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005)) (emphasis in original). In *Mercedes-Benz* and *Sullivan*, the courts concluded that although the statutes at issue (the Shipping Act of 1984 and Railway Labor Act, respectively) had strong preemptive force, the statutes did not create an original federal cause of action and, therefore, removal was improper.

3.  Preemption decisions involving "Regulation J"

Several decisions have addressed preemption in the specific context of Regulation J. In *AmSouth Bank v. Dale*, the Sixth Circuit Court of Appeals directly considered removal jurisdiction based on complete preemption. The court began its analysis by observing that "only Congress can completely preempt a state cause of action." *Dale*, 386 F.3d at 776 (citing

---

[1] In *Hahn v. Rauch*, the court noted that the Supreme Court has also found complete preemption based upon the Price–Anderson Act, 42 U.S.C. § 2014(hh), and certain circuits have found complete preemption under § 301 of the Copyright Act, 17 U.S.C. § 301(a)), but agreed that the doctrine is "extremely limited." *Hahn*, 602 F. Supp. 2d 895, 910 n. 7 (N.D. Ohio 2008).

*Beneficial Nat'l Bank*, 539 U.S. at 8, 9 & n. 5). The court noted the "balance struck between an agency's ability to promulgate regulations with the force of federal law—and therefore its ability to preempt state causes of action through ordinary preemption—and its inability to create a right of action where Congress has not intended it do so." *Id.* at 776-77 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.")). "The true question is whether Congress, in enacting [the enabling statute], intended to create a remedy for violations of [the regulation]." *Id.* (quoting *Marx v. Centran Corp.*, 747 F.2d 1536, 1544 (6th Cir.1984)). In sum, "[w]hile the agency can create federal law, it cannot expand federal jurisdiction." *Id.*

The proper inquiry, therefore, focuses on Congress' intent, as reflected in the Federal Reserve Act, 12 U.S.C. § 221 et seq., the enabling statute for Regulation J. *Dale*, 386 F.3d at 777. In *Dale,* the court determined that the Federal Reserve Act does not reflect congressional intent for Regulation J to <u>completely</u> preempt state law:

> The regulations were promulgated pursuant to the authority granted by four different sections of the Act: § 11(i) and (j) (12 U.S.C § 248(i) and (j)); § 13 (12 U.S.C. § 342); paragraph fourteen of § 16 (12 U.S.C. § 248(o)); and § 19(f) (12 U.S.C. § 464). None of these sections provide specific authority for the Fedwire system—instead, they are general provisions—and none of them reference causes of action having to do with the Federal Reserve system, or any of the markers associated with complete preemption.

*Id.* Dollar argues that these sections of the Federal Reserve Act demonstrate a broad delegation of authority by Congress to the agency. Dollar, however, does not cite any statutory language that supports complete preemption.

In *Hutchins v. Modern Woodmen Fraternal Financial*, 978 F. Supp.2d 637 (S.D. Miss. 2013), the court addressed a factual situation similar to this case, involving a victim of a fraud

scheme who sued a bank in state court for negligence and negligence per se relating to a wire transfer and the bank sought removal arguing that the claims were completely preempted by Regulation J.  The parties agreed that the relevant wire transfer occurred via the FedWire.  The court reviewed the general principles for removing a case and emphasized the important distinction between defensive preemption and the complete preemption necessary to create removal jurisdiction.  *Id.* at 644-45 (quoting *Bartolome v. Homefield Financial Inc.*, No. CV 09–7258, 2009 WL 4907050, *3 (C.D. Cal. Dec. 11, 2009) ("the extraordinary consequences of complete preemption counsel against finding the requisite Congressional intent when the regulation reflects only the views of an executive branch agency acting without Congressional guidance"); and *Bullard v. Southwest Crop Ins. Agency, Inc.*, 984 F.Supp. 531, 537–538 (E.D.Tex.1997) ( "it is quite another matter to conclude that an agency may also completely or super preempt an area, thereby allowing an agency to create federal court subject matter jurisdiction where none exists.")).  In *Hutchins* the court concluded that the bank failed to meet its burden to demonstrate a basis for removal and remanded the case to the state court.  *Id.* at 647.[2]

      Dollar relies on two decisions from the Fourth Circuit Court of Appeals.  In *Donmar*, the court held that Regulation J preempted state law claims of negligence and wrongful payment involving wire transfers.  *Donmar*, 64 F.3d at 946.  In *Eisenberg,* the court reached a more nuanced result.  In *Eisenberg*, the court cited *Donmar* with approval and examined whether a state law cause of action would be inconsistent with or duplicative of the rules established in Regulation J.  301 F.3d at 224 & n.1.  State law claims based on the manner in which the bank

---

[2] The court noted that even "defensive preemption" may not apply.  *Id.* at 646 n.4 (citing *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (Regulation J is not the exclusive means by which a plaintiff can seek redress for alleged harms arising from a funds transfer);  *see Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp.3d 653, 660 (E.D. Pa. 2020) (claims premised on the opening of an account prior to the wire transfer are not preempted).

received and credited the wire transfer would be preempted. *Id*. at 223. The court determined, however, that state law negligence claims rooted in the duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer can evade preemption because Regulation J does not address those kinds of claims. *Id.* at 224 ("State law claims premised on conduct not covered by Subpart B cannot create a conflict with or duplicate the rules established in Subpart B."). The court concluded that claims regarding the opening and management of fake accounts would not be preempted. *Id*.

The court in *Dale* distinguished *Eisenberg* and *Donmar*, without discussion, as examples of "ordinary preemption" (i.e., a preemption defense), rather than the complete preemption that would justify removal jurisdiction. *Id.* at 776. In *Hutchins* the court discussed the *Donmar* and *Eisenberg* decisions at length and concluded that those decisions did not support removal under the complete preemption doctrine. The court noted that in the complaint in *Donmar*, the plaintiff asserted a federal question claim for violation of Regulation J in addition to state law claims, and therefore, the court did not need to discuss complete preemption. *Hutchins*, 978 F. Supp.2d at 642-43 (citing *Donmar*, 64 F.3d at 948). Indeed, *Donmar* did not involve removal at all – the complaint was originally filed in the United States District Court for the Western District of North Carolina. *See Donmar Enterprises, Inc. v. S. Nat. Bank of N. Carolina*, 828 F. Supp. 1230, 1234 (W.D.N.C. 1993), aff'd, 64 F.3d 944 (4th Cir. 1995) ("Plaintiff's suit seeks recovery of at least $187,276.71 under three legal theories; 12 C.F.R. 210 et seq (Federal Reserve Board Regulation J), common law negligence, and wrongful payment."). In *Hutchins*, the court correctly explained that *Eisenberg* similarly did not involve removal. The plaintiff in *Eisenberg* filed that suit in federal court on the basis of diversity jurisdiction. 301 F.3d at 222. In sum, both *Donmar* and *Eisenberg* involved "defensive preemption," not removal based on complete

preemption. In *Hutchins* the court determined that only the *Dale* decision was directly on point and that *Dale* was correctly decided. 978 F. Supp.2d at 643-44.

This court agrees with the analysis in *Dale* and *Hutchins*. There is no evidence of congressional intent for the kind of <u>complete</u> preemption that would support removal under the facts of this case. The complaints in *Donmar* and *Eisenberg* were initially filed in federal court. The discussions of preemption in those decisions, therefore, did not involve the "complete preemption" necessary to invoke removal, but only a preemption defense. In other words, the alleged circuit split is illusory.[3] Dollar will have the opportunity to assert its preemption defense in the state court. *See Railway Labor Ex. Ass'n v. Pittsburgh L. Erie RR*, 858 F.2d 936, 943 (3d Cir. 1988) (noting that state courts are competent to consider ordinary preemption as an affirmative defense).

4.      Whether Regulation J creates a private right of action

In addition, the court harbors doubts about the "overlooked aspect of the complete preemption doctrine," i.e., whether Regulation J gives rise to original federal jurisdiction. *Mercedes-Benz*, 2018 WL 6522487, at *5. Although Regulation J provides that it "governs the rights and obligations" of various participants in the Fedwire funds transfer system, there is no express language providing a private right to seek redress in federal court. 12 C.F.R. § 210.25.

---

[3] The court is aware of one clearly inconsistent decision. In *Bensman v. Citicorp Tr., N.A.*, 354 F. Supp. 2d 1330, 1333 (S.D. Fla. 2005), the district court held that removal was proper because the plaintiff's state law claim was completely preempted by Regulation J. For the reasons set forth above, the court concludes that *Bensman* is wrongly decided and based on a misreading of *Bonmar* and *Eisenberg*. In *Utility Supply Co. v. AVB Bank*, No. 10-CV-124, 2010 WL 4941506, at *3 (N.D. Okla. Nov. 30, 2010), the court denied a motion to remand, finding that Regulation J applied to portions of the plaintiff's state law claims, but the decision did not explicitly address the "complete preemption" doctrine.

Courts should be reluctant to read an implied private cause of action into a statute in light of the general presumption that only Congress can create a private cause of action. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). There is a stronger presumption against reading an implied private right of action into a regulation. *Id.* at 286 (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994) (a "private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute]"). The Court reiterated: "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress." *Id.* at 291. In *Alexander*, the Court summarized: "a failure to comply with regulations promulgated under [the statutory authority] that is not also a failure to comply with [the statute itself] is not actionable." *Id.* at 286.

There is limited authority about whether the relevant provisions of the Federal Reserve Act or Regulation J create a private right of action. In *Donmar* (involving a complaint that explicitly asserted a claim under Regulation J), the court concluded, without analysis, that a private cause of action can be maintained pursuant to Regulation J. *Donmar*, 64 F.3d at 946. In *United States v. PNC Bank*, No. CV 07-417, 2009 WL 10736701 (E.D. Pa. Mar. 31, 2009), the court stated, in dicta: "Although not addressed by the Parties, it appears that Regulation J allows a private cause of action." *Id.* at *3 (citing *Donmar*). In *Texas Brand Bank v. Luna & Luna, LLP*, No. 3:14-CV-1134-P, 2014 WL 11515857, at *2 (N.D. Tex. Aug. 29, 2014), the bank argued that Regulation J does not provide a private cause of action, and the court assumed, arguendo, that federal law does not create that kind of claim. In *In re Corestates Trust Fee Litigation*, 39 F.3d 61, 68 (3d Cir. 1994), the court concluded that Congress did not intend to create a private cause of action when it enacted § 92a of the Federal Reserve Act. In sum, courts

must hesitate to imply a private cause of action and the applicable legal authorities are murky, at best.  Because the better view is that there in no private cause of action under Regulation J, the court would remand on this basis, as well.

5. Preemptive force of Regulation J

As explained above, only Congress, not an administrative agency, can create removal jurisdiction.  Even if the court considered the regulatory intent with respect to Regulation J, it would reach the same result.

The Board of Governors of the Federal Reserve System ("Board") provided commentary in adopting Regulation J.  Appendix A constitutes an official Board position designed "to help readers interpret that provision."  12 C.F.R. § Pt. 210, Subpt. B, App. A.  The Commentary to Regulation J addresses preemption as follows:

> [R]egulations of the Board may pre-empt inconsistent provisions of state law.  Accordingly, subpart B of this part supersedes or pre-empts inconsistent provisions of state law. **It does not affect state law governing funds transfers that does not conflict with the provisions of subpart B of this part**, such as Article 4A, as enacted in any state, as it applies to parties to funds transfers through Fedwire whose rights are not governed by subpart B of this part.

*Id.* (emphasis added).  Thus, as recognized in *Donmar*, Regulation J "specifies that inconsistent provisions of state law are pre-empted, while state law that does not conflict is not pre-empted." *Donmar*, 64 F.3d at 949.

This official position of the Board creates a preemption defense, but falls far short of demonstrating an intent to occupy the entire field so completely that any state law claim is in reality a federal claim, such that removal jurisdiction is proper.  Regulation J "does not affect" certain state law claims and does not provide the exclusive cause of action.  *See Beneficial Natl.*

13

*Bank*, 539 U.S. at 9 (even if statute provides a complete federal defense, there is no removal jurisdiction unless Congress intended the federal statute to provide the exclusive cause of action).

      6.    *Grable* Doctrine

In the alternative, Dollar contends that subject-matter jurisdiction is proper under the *Grable* doctrine, *see Grable & Sons Metal Prods., Inc. v. Darue Mfg.*, 545 U.S. 308 (2005). Courts typically refer to "*Grable* jurisdiction," but the doctrine is more precisely described as another method for determining whether federal question jurisdiction exists. *See Inselberg v. New York Football Giants, Inc.*, 661 F. App'x 776, 779 (3d Cir. 2016). Under *Grable*, jurisdiction may exist over a state law claim if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). The *Grable* doctrine has been described as "narrow and unusual." *Brown v. Organon USA, Inc.*, No. 07-3092, 2008 WL 2625355, at *4 (D.N.J. June 27, 2008). It is Dollar's burden, as the party asserting federal jurisdiction, to establish that jurisdiction under the *Grable* analysis is proper.

A federal issue is "necessarily raised" if an element of the state law claim requires construction of federal law. *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412–13 (3d Cir. 2015). In determining whether the federal issue is "actually disputed and substantial," the Supreme Court distinguishes cases presenting pure questions of law that would govern numerous other cases (as in *Grable)*, from those that are "fact-bound and situation-specific." *Id.* at 413 (citation omitted). To be "substantial," the issue must be significant "to the federal system" as opposed to only the parties. *Id.*

The prototypical examples of the kind of jurisdiction described in *Grable* are where the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question. *Id.* at n.6 (citing *Gunn*, 133 S. Ct. at 1066). None of these situations apply here. Indeed, Clayton argues that no federal issues are implicated because her claims involve Dollar's activities prior to the wire transfers, such as obtaining an ITBIT Wallet ID. *See Eisenberg*, 301 F.3d at 223-24.

Dollar relies on *Texas Brand*, 2014 WL 11515857 at *3, a nonprecedential decision which concluded that under the *Grable* doctrine, jurisdiction over a bank's breach of contract/indemnity claim was proper. *Texas Brand* involved a claim filed by the bank after it restored the disputed fraudulent funds to its customer's account and the crux of the case was whether the bank's security procedures were commercially reasonable under Regulation J. The plaintiff bank affirmatively clarified that it was bringing its claims pursuant to UCC Article 4A as codified in Regulation J, not state law. *Id.* at *1. In this case, by contrast, Regulation J is being raised by Dollar as a <u>defense</u>, not as part of the plaintiff's claim. *See Caterpillar*, 482 U.S. at 399 (when a plaintiff invokes a federal right, the plaintiff has chosen to plead a federal claim, and removal is at the defendant's option; by contrast, "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law") (emphasis in original).

In *Hutchins* (involving a similar dispute about a fraudulent wire transfer), the court determined there was no jurisdiction under the *Grable* doctrine and stated: "it is clear to the court that [the bank] has failed to demonstrate that there exists a substantial federal question as would support an exercise of federal jurisdiction." *Hutchins*, 978 F. Supp.2d at 646 n.5. The court held that the bank failed to establish any of the *Gunn* factors. The court explained that even if federal

standards and duties apply to a state law claim, those standards do not implicate a substantial federal question. *Id.* at 646-47 (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804). A substantial federal question arises only where an essential issue in the cause of action raises a conflict with the federal standard; "no federal jurisdiction [exists] based on mere allegation that violation of federal standard is proof of negligence." *Id.* (citing *Richard v. Fleetwood Enterprises, Inc.*, 4 F.Supp.2d 650, 656–57 (E.D.Tex. 1998)).

The court finds the reasoning in *Hutchins* persuasive. The basis for jurisdiction under the *Grable* doctrine in this case is even weaker – Dollar seeks to create federal jurisdiction based on an allegation that its compliance with the federal standard is a defense to a negligence claim. There is no discrete or important federal question of law and no federal actor; rather, this is a fact-bound, individualized dispute, perhaps implicating a federal preemption defense. *Accord C4Polymers, Inc. v. Huntington Nat. Bank*, No. 12 CV 2400, 2013 WL 102644, at *3 (N.D. Ohio Jan. 8, 2013) (rejecting a similar argument about jurisdiction under the *Grable* doctrine). Here, Dollar did not meet its burden to justify removal jurisdiction.

Conclusion

For the reasons set forth above, Dollar did not meet its burden to demonstrate that removal is proper. This case will be remanded FORTHWITH to the state court.

An appropriate order follows.

Dated: October 5, 2021

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge